UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| BOBBY BOWLING, | ) | |
| a/k/a ROBERT E. BOLING, | ) | |
| Petitioner, | ) | |
| v. | ) | No. 2:17-CV-35-RLJ-MCLC |
| RANDY LEE, Warden, | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

State inmate Bobby Bowling ("Petitioner") has filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the legality of his confinement under his 2007 Sullivan County, Tennessee Criminal Court judgment of conviction [Doc. 2]. Respondent Warden Randy Lee has moved to dismiss Petitioner's habeas corpus petition, asserting that it is untimely under 28 U.S.C. § 2244(d)(1)(A) [Doc. 10]. In support of his Motion to Dismiss, Respondent has submitted a brief and copies of the state court record [Docs. 11-12].[1] Petitioner has responded to the Motion to Dismiss, arguing that he showed due diligence in pursuit of his claims and invoking equitable tolling of § 2244(d)'s statute of limitations to save his § 2254 petition from the application of any time-bar [Doc. 13].

For the reasons below, the Court will **GRANT** Respondent's Motion to Dismiss and will **DISMISS** this petition.

**I.     BACKGROUND**

---

[1] The state court record consists of twenty-seven attachments [Docs. 12-1 through 12-27].

On January 10, 2007, a Sullivan County jury convicted Petitioner of one count of aggravated robbery [Doc. 2 p.1]. *State v. Bowling*, No. E2008-00351-CCA-R3-CD, 2009 WL 482763 (Tenn. Crim. App. Feb. 26, 2009). Petitioner was sentenced to thirty years as a career offender and, on October 12, 2007, the judgment was entered. *Id.*, 2009 WL 482763, at *1. Petitioner filed a direct appeal in the Tennessee Court of Criminal Appeals ("TCCA"), but the TCCA rejected his claim of insufficient evidence and held that all other issues had been waived by the untimely filing of his motion for a new trial. *Id.*, 2009 WL 482763, at *6.

Petitioner returned to the trial court, filed a petition for post-conviction relief, and was granted permission to file a timely motion for a new trial. *State v. Bowling*, No. E2011-00429-CCA-R3-CD, 2013 WL 816176 (Tenn. Crim. App. Mar. 5, 2013). The trial court overruled Petitioner's motion for a new trial and Petitioner filed his second direct appeal in the TCCA. *Id.*, 2013 WL 816176, at * 1. The TCCA rejected Petitioner's claims that the trial court erred by denying his motion for new counsel and by failing to suppress photographs and testimony that he characterized as "fruit of the poisonous tree" [Doc. 2 at 3]. *Id.*, 2013 WL 816176, at *1.

Petitioner again returned to the trial court and filed a motion to reopen his post-conviction proceedings. *Boling v. State*, No. E2014–02258-CCA-R3-PC, 2015 WL 5612899 (Tenn. Crim. App. Sept. 24, 2015), *perm app. denied* (Tenn. 2016).[2] The trial court granted the motion to reopen and, after an evidentiary hearing on Petitioner's claims of ineffective assistance of counsel, denied collateral relief. *Id.*, 2015 WL 5612899, at *1. Petitioner filed an appeal and the TCCA affirmed the trial court's denial of the post-conviction petition. *Id.*, 2015 WL 5612899, at *9. On February

---

[2] Petitioner's name was spelled in state court opinions as both "Boling" and "Bowling." *See Bowling*, 2013 WL 816176, at *1 n.1.

18, 2016, the Tennessee Supreme Court ("TSC") declined to permit Petitioner to file a further appeal.

The instant § 2254 petition was filed on February 24, 2017, the date that Petitioner verified under penalty of perjury that he placed his petition in the prison mailing system [Doc. 2 at 14]. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (deeming an action to be filed on the date an inmate delivers it to the prison authorities for mailing); *Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999) (finding that a motion to vacate signed under penalty of perjury one day before the lapse of the relevant limitation statute indicated that the motion was delivered to prison mailroom personnel before the filing deadline).

## II.  DISCUSSION

The two issues before the Court are: (1) whether Petitioner filed his § 2254 application within the controlling statute of limitations, and (2) if he did not, whether the period for filing his application should be equitably tolled.

### A.  Timely Filing of § 2254 Petition

The Antiterrorism and Effective Death Penalty Act ("AEDPA") contains a one-year statute of limitations governing the filing of an application for a federal writ of habeas corpus. *See* 28 U.S.C. § 2244(d)(1). The statute begins to run when one of four circumstances occurs: (1) the conclusion of direct review; (2) upon the removal of an impediment which prevented a petitioner from filing a habeas corpus petition; (3) when a petition alleges a constitutional right, newly recognized by the Supreme Court and made retroactive on collateral review; or (4) when a claim depends upon factual predicates which could not have been discovered earlier through the exercise of due diligence. *Id.* The statute also contains a time-tolling feature: The time "during which a properly filed application for State post-conviction or other collateral review with respect to the

pertinent judgment or claim is pending shall not be counted toward any period of limitation . . . ." 28 U.S.C. § 2244(d)(2). The first circumstance is the relevant one here.

To determine the timeliness of this petition, the Court first must determine the date Petitioner's conviction became final. On March 5, 2013, the TCCA denied Petitioner's second direct appeal. *State v. Boling*, 2013 WL 816174, at *1. Sixty days later (i.e., May 4, 2013), the time expired for Petitioner to seek review of the TCCA's decision in the TSC. Tenn. R. App. P. 11(b). Because May 4, 2013, was a Saturday, Petitioner had until Monday, May 6, 2013, to petition the TSC for permission to appeal.[3] Thus, Petitioner's conviction became final on May 6, 2013, and the next day, the AEDPA's one-year clock began to tick. Fed. R. Civ. P. 6(a)(1)(A); *see also Jimenez v. Quarterman*, 555 U.S. 113, 120 (2009) (where a state court reopens a direct appeal, a conviction is not final until the conclusion of the out-of-time appeal).

Accordingly, for purposes of § 2244(d)(1)(A), the time for filing this § 2254 petition would expire on May 7, 2014, unless the time was tolled by Petitioner's proper filing of a collateral review petition. 28 U.S.C. § 2244(d)(2).

Petitioner filed his motion to reopen his state petition for post-conviction relief on May 9, 2013 [Doc. 12-16 at 52-62], two days after the AEDPA one-year clock started ticking. On that date, the clock stopped.[4] It remained stopped throughout Petitioner's re-opened post-conviction

---

[3] A Tennessee civil procedural rule provides that "the date of the act, event, or default after which the designated period of time begins to run is not to be included" and that, if the last day of the computed period is a Saturday or a Sunday, then the period runs until the end of the next day that is not a Saturday or Sunday. Tenn. R. Civ. P. 6.01. A federal procedural rule likewise excludes Saturdays and Sundays from the period, runs the period to the end of the next day that is not one of those days, and "exclude[s] the day of the event that triggers the period." Fed. R. Civ. P. 6(a)(1).

[4] A motion to reopen is part of the ordinary course of Tennessee's post-conviction review process. *See Patterson v. Brandon*, No. 3:07-0029, 2008 WL 821986, at *6 (M.D. Tenn. Mar. 24, 2008) (citing, *inter alia, Fritts v. Mills*, 2005 WL 2416997 (E.D. Tenn. Sept. 30, 2005)); *see also Wall v. Kholi*, 562 U.S. 545, 547 (2011) (holding "that the phrase 'collateral review' in §

proceedings, including his first appeal to the TCCA, and his application to the TSC seeking permission to appeal the TCCA's decision. *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002) (holding that claim is "pending" for the entire term of state court review, including intervals between one state court's judgment, the filing of a timely appeal with a higher state court, and "until the application has achieved final resolution through the State's post-conviction procedures"); *Payton v. Brigano*, 256 F.3d 405, 408 (6th Cir. 2001) (tolling the statute from the time a post-conviction petition is filed until the state supreme court denied an appeal).

Petitioner's post-conviction proceedings terminated on February 18, 2016, when the TSC denied his application for permission to appeal. *See Lawrence v. Florida*, 549 U.S. 327, 332 (2007) (ruling that the statute of limitations in § 2244(d)(2) is not tolled by the filing in the Supreme Court of a petition for certiorari for review of a post-conviction petition); *see also Ross v. McKee*, 465 F. App'x 469, 472 (6th Cir. 2012) (recognizing that "[a] petition for discretionary review in state court counts as 'state post-conviction or other collateral review,' and thus tolls AEDPA's statute of limitations . . .") (internal citations omitted). The next day, February 19, 2016, the clock resumed ticking. It ticked for 363 more days and stopped on February 16, 2017.

As noted, the instant § 2254 application was filed on February 24, 2017—eight days too late. Petitioner acknowledges that he filed his habeas corpus petition outside the limitations period [Doc. 2 at 13]. The Court agrees and, therefore, concludes that the application is untimely.

**B.     Equitable Tolling**

In Petitioner's petition, as well as in his response to Respondent's Motion to Dismiss, he requests equitable tolling of the statute of limitations [Doc. 2 at 13, Doc. 23 at 1-2].

---

2244(d)(2) means judicial review of a judgment in a proceeding that is not part of direct review"). As such, a motion to reopen post-conviction proceedings is a time-tolling motion under the AEDPA's tolling provision.

The AEDPA statute of limitations is not jurisdictional and is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). Equitable tolling of AEDPA's limitation statute is warranted where a petitioner shows that he: (1) diligently has pursued his rights and (2) was prevented from timely filing the petition because an extraordinary circumstance stood in his way. *Holland*, 560 U.S. at 649. A petitioner bears the burden of demonstrating that he is entitled to equitable tolling. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). A court must decide whether to toll the statute on a case-by-case basis. *Cook v. Stegall,* 295 F.3d 517, 521 (6th Cir. 2002). Federal courts should grant equitable tolling sparingly. *Souter v. Jones*, 395 F.3d 577, 588 (6th Cir. 2005); *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003); *Cook*, 295 F.3d at 521. "Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000).

Petitioner's request for equitable tolling rests on his contentions that, "due to severe space restrictions, [he] was forced to give his legal work to TDOC for storage. He requested his legal papers back to prepare this petition, and was told TDOC could not find his legal work. After several months, the prison located his papers, and petitioner filed immediately" [Doc. 2 at 13]. Along these lines, Petitioner has attached to his petition a handwritten log of events that purports to show that he requested his legal work from intake on November 15, 2016, that thirteen days later, intake responded that it "can't find legal work;" that two other requests were made respectively on December 2, 2017, and January 18, 2017; that he sent the Warden a letter about the legal work on February 2, 2017, and that he received the requested legal work on February 7, 2017 [Doc. 2-1 at 8].

In his Response to Respondent's Motion to Dismiss, Petitioner adds that he needed his transcripts, prior motions, briefs filed on his behalf, and other related documents to assert

exhaustion and to litigate his habeas corpus claims [Doc. 13 at 1]. Petitioner also asks the Court to apply the rule of lenity and to appoint counsel to assist him both in obtaining proof as to the length of time and the reasons for the prison to withhold his legal materials and in an evidentiary hearing where he can make out his case for equitable tolling [*Id.* at 1-2].

1. **Diligence**

The diligence required to establish the first prong of equitable tolling is not the "maximum feasible diligence," but only "reasonable diligence." *Holland*, 560 U.S. at 653 (citations omitted). Whether diligence has been exercised is a "fact-intensive inquiry," *Id.* at 564, "that depends on the totality of circumstances in a particular case." *Martin v. Fayram*, 849 F.3d 691, 698 (8th Cir. 2017) (citing *Holland*, 560 at 649-50).

When Petitioner's formal requests to obtain his legal materials did not produce the return of his misplaced legal materials, his own log shows that he waited from November until February—the month the AEDPA limitations statute for filing the instant § 2254 petition was due to expire—before writing to the Warden requesting his legal materials. Five days after Petitioner sent the letter to the Warden, explaining the situation involving the missing legal materials, those legal materials were returned to Petitioner. It seems obvious that Petitioner's letter to the Warden prompted the return of the legal materials, which suggests that an earlier letter to the Warden apprizing him of the necessity for a speedy return of Petitioner's legal materials would have triggered the same result.

In *Holland*, a petitioner was found diligent where he filed his pro se habeas corpus petition the day he leaned that his 365-day AEDPA clock had expired. However, the immediate filing of the § 2254 petition was only one circumstance among several that the Supreme Court found persuasive in *Holland*. The *Holland* petitioner also wrote numerous letters to his counsel seeking

7

information and providing direction, repeatedly contacted the courts, their clerks, and the bar association in an effort to have counsel removed from his case, and prepared and promptly filed his habeas corpus petition the day he learned that the one-year period had expired. *Id.*, 560 U.S. at 653.

Here, Petitioner was in possession of his legal materials on February 6, 2017, but he waited until February 24, 2017, to file his petition. Petitioner has not explained why he did not take the opportunity to file the instant petition in the short period that remained on AEDPA's one-year clock after his legal materials were returned to him. *See Schlueter v. Varner*, 384 F.3d 69, 76 (2d Cir. 2004) (reasoning that a petitioner could have learned of an attorney error earlier and used a "small window of time" to file his pro se petition).

Nor has Petitioner explained why he did not seek to inform the Court, in the interim, as to the supposed impediment blocking his filing of a timely habeas corpus application. *See Dickershaid v. Martel*, 648 F. App'x 618, 620 (9th Cir. 2016) (finding that petitioner exercised reasonable diligence where his legal materials were seized in contravention of prison policy and where he repeatedly filed grievances, requested prison officials to find and return his legal materials, went to the storage area where such materials are kept, wrote to the court, and filed his federal habeas petition on the same day it was returned to him). Petitioner knew about the expiration of the AEDPA clock and he knew that he was filing his petition outside the statutory period because he stated as much in his petition [Doc. 2 at 18].

Diligence is measured during the entire one-year period. *See Andrews v. United States*, No. 17-1693, 2017 WL 6376401, at*2 (6th Cir. Dec. 12, 2017) (observing that Petitioner failed to explain his diligence during the eight months before the extraordinary circumstance arose). The Court finds that, unlike the petitioner in *Holland*, Petitioner was not reasonably diligent in pursuing

8

his federal habeas claims while the AEDPA clock was still running. In short, Petitioner has demonstrated that he made modest efforts to obtain his legal materials but he has not "ma[de] a strong showing of his own diligence." *Patterson v. Lafler*, 455 F. App'x 606, 610 (6th Cir. 2012).

## 2. Extraordinary Circumstance

Courts have held that a lack of access to personal legal materials standing alone does not constitute an extraordinary circumstance. *Bell v. Indiana*, No. 5:14CV-P224-TBR, 2015 WL 852305, at *3 (W.D. Ky. Feb. 26, 2015) (collecting cases); *cf. Jones v. United States*, 689 F.3d 621, 727-28 (6th Cir. 2012) (finding that, when viewed together, a combination of factors, including inmate's separation from his legal materials caused by several prison transfers, partial illiteracy, and physical health issues, constituted extraordinary circumstances). As the Sixth Circuit has observed, the Rules Governing Section 2254 Cases "seem to envision that petitioners may at times have to file their petitions without having had access to the state-court record." *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 751 (6th Cir. 2011).

Furthermore, a TDOC rule concerning cell space restrictions applies equally to all TDOC inmates and, by its terms, requires compliance by all TDOC inmates.[5] The word "extraordinary" is defined as "going beyond what is usual, regular, or customary" and as "exceptional to a very marked extent." Merriam–Webster Dictionary, Extraordinary, http://www.merriamwebster.com /dictionary /extraordinary (last visited Mar. 27, 2018). The Court does not consider the

---

[5] The TDOC policy governing inmate personal property, Policy # 504.01, provides, in relevant part, that "[t]he total amount of legal materials that an inmate may have in his/her possession will not exceed a space delineated by 1.5' x 1' x 1'. Legal materials that exceed this space allocation may be stored in another area of the facility approved by the Warden." *See* Tennessee Department of Correction Administrative Policies and Procedures, Inmate Personal Property (Dec. 1, 2013), online at https://www.tn.gov/content/dam/tn/correction/documents/504-01.pdf (last visited Mar. 27, 2018).

9

enforcement of a prison rule that applies equally to all TDOC inmates nor the inaccessibility of the legal materials seized pursuant to the rule to be an extraordinary circumstance. To the contrary, the unavailability of Petitioner's legal materials, even if an unforeseen consequence of a prison rule enforcement, does not exceed a garden-variety type of circumstance and does not rise to the level of an extraordinary circumstance. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) (declining to extend "the principles of equitable tolling" to "garden variety" error).

Finally, Petitioner did not explain satisfactorily how the lack of his legal materials prevented him from timely filing his habeas corpus petition. *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000) (observing that a petitioner cannot demonstrate a causal relationship between the extraordinary circumstance and the lateness of his filing if he, "acting with reasonable diligence could have filed on time notwithstanding the extraordinary circumstances"). Petitioner generally contends that he needed his legal materials "to assert exhaustion, and to litigate the current issues" [Doc. 13 at 1]. However, a habeas petition need only "specify all the grounds for relief" and "state the facts supporting each ground." Rules Governing Section 2254 Cases 2(c). The § 2254 petition is not required to allege exhaustion. Granted, Rule 2(d) of the Rules Governing Section 2254 Cases directs that a petition must "substantially follow" a standard form, on which there are questions involving exhaustion of state remedies; yet, this rule "imposes no affirmative pleading requirements." *Kilgore v. Attorney Gen. of Colo.*, 519 F.3d 1084, 1088 (10th Cir. 2008).

Petitioner, who shoulders the burden of justifying the application of equitable tolling, has failed to carry his burden. *See Andrews*, 2017 WL 6376401, at*2 (noting that a petitioner did not demonstrate that he was diligent or that the deprivation of his legal materials was an extraordinary circumstance that prevented his timely filing). Therefore, equitable tolling is not appropriate in this case, and it cannot be invoked to save this untimely petition. *See Hall*, 662 F.3d at 747

(affirming denial of equitable tolling to Petitioner whose § 2254 application was five days late purportedly due to the lack of access to a trial transcript).

### 3. Rule of Lenity

Petitioner requests that the Court apply the rule of lenity to excuse his untimely filing. The rule of lenity is a canon of statutory construction used when interpreting statutes. *United States v. Boucha*, 236 F.3d 768, 774 (6th Cir. 2001) ("If the statute remains ambiguous after consideration of its plain meaning, structure and legislative history, the rule of lenity is applied in favor of criminal defendants.") (citing *United States v. Hill*, 55 F.3d 1197, 1206 (6th Cir. 1995)). The rule of lenity has no application in this case because this matter presents no statutory interpretation question.

## III.  CERTIFICATE OF APPEALABILITY

The Court next must consider whether to issue a certificate of appealability ("COA") should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right. Where a court dismisses a § 2254 petition on procedural grounds, a COA will issue upon a showing that reasonable jurists would debate whether a valid claim has been stated and whether the court's procedural ruling is correct. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court finds that Petitioner has failed to make a substantial showing of the denial of a constitutional right because reasonable jurists would not disagree about whether the Court correctly ruled that the petition is untimely; thus, he will be denied a certificate of appealability. Fed. R. App. P. 22(b); *Slack*, 529 U.S. at 484.

## IV.  CONCLUSION

Based on the above discussion, the Court has determined the petition is time-barred under § 2244(d)(2) and that equitable tolling of the statute of limitations is unwarranted. Therefore, the Court will **GRANT** Respondent's motion to dismiss the petition [Doc. 10] and will **DISMISS** this case.

In addition to the above, the Court will **DENY** Petitioner a certificate of appealability; will **CERTIFY** that any appeal from this action would not be taken in good faith; and will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal.

**A SEPARATE JUDGMENT WILL ENTER.**

**ENTER:**

s/ Leon Jordan
United States District Judge